IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| AUTO-OWNERS INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION FILE NO. |
| BENJAMIN J. COHEN, individually; SARAH F. COHEN, individually; LUXE PROPERTIES, INC. D/B/A, HEDGEWOOD HOMES; HEDGEWOOD GLENWOOD, LLC; HEDGEWOOD REALTY; SILVER CREEK REDEVELOPMENT COMPANY; GRANT ADAM HAFNER, individually; HAFNER CONSTRUCTION, INC.; PENNER GRAFF, LLC; STEVEN DONALD GRAFF, individually; PAMELA DALE SESSIONS, individually; JAMES W. DONNELLY JR., individually; BEN SESSIONS DONNELLY, individually; DREW S. DONNELLY, individually; ANDREA MATINCHEK, individually; and FRANCES M. MARTY, individually; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW AUTO-OWNERS INSURANCE COMPANY, Plaintiff in the above-styled matter, and files this Complaint for Declaratory Judgment, showing this Honorable Court as follows:

## PARTIES

1.

Auto-Owners Insurance Company (hereinafter "Auto-Owners") is a corporation organized and existing under the laws of the state of Michigan with its principal place of business in Michigan.

2.

Benjamin J. Cohen ("Ben Cohen"), as a natural person who is a citizen of the United States, who is physically present in Georgia, who resides in Fulton County, Georgia, and who intends to make Georgia his home, is an individual citizen of the state of Georgia.   Ben Cohen is subject to the jurisdiction and venue of this Court.

3.

Sarah F. Cohen ("Sarah Cohen"), as a natural person who is a citizen of the United States, who is physically present in Georgia, who resides in Fulton County, Georgia, and who intends to make Georgia her home, is an individual citizen of the

state of Georgia.   Sarah Cohen is subject to the jurisdiction and venue of this Court.

4.

Luxe Properties, Inc. ("Luxe"), which may perform business as Hedgewood Homes, is a corporation organized and existing under the laws of the state of Georgia with its principal place of business and citizenship in Georgia.   Luxe is subject to the jurisdiction and venue of this Court.

5.

Hedgewood Glenwood, LLC ("Glenwood") is a limited liability company organized and existing under the laws of the state of Georgia with its principal place of business and citizenship in Georgia.   All individual members of Glenwood, as natural persons who are citizens of the United States, who are physically present in Georgia, and who intend to make Georgia their home, are individual citizens of the state of Georgia.   Glenwood is subject to the jurisdiction and venue of this Court.

6.

Hedgewood Realty ("Realty") is a real estate brokerage firm with its principal place of business and citizenship in Georgia.   Realty is subject to the jurisdiction and venue of this Court.

7.

Silver Creek Redevelopment Company ("Silver Creek") is a corporation

organized and existing under the laws of the state of Georgia with its principal place of business and citizenship in Georgia.   Silver Creek is subject to the jurisdiction and venue of this Court.

8.

Grant Hafner ("Hafner"), as a natural person who is a citizen of the United States, who is physically present in Georgia, and who intends to make Georgia his home, is an individual citizen of the state of Georgia.   Hafner is subject to the jurisdiction and venue of this Court.

9.

Hafner Construction, Inc. ("HC") is a corporation organized and existing under the laws of the state of Georgia with its principal place of business and citizenship in Georgia.   HC is subject to the jurisdiction and venue of this Court.

10.

Penner Graff, LLC ("PG") is a limited liability company organized and existing under the laws of the state of Georgia with its principal place of business and citizenship in Georgia.   All individual members of PG, as natural persons who are citizens of the United States, who are physically present in Georgia, and who intend to make Georgia their home, are individual citizens of the state of Georgia. PG is subject to the jurisdiction and venue of this Court.

4

11.

Steven Donald Graff ("Graff"), as a natural person who is a citizen of the United States, who is physically present in Georgia, and who intends to make Georgia his home, is an individual citizen of the state of Georgia.   Graff is subject to the jurisdiction and venue of this Court.

12.

Pamela Dale Sessions ("Sessions"), as a natural person who is a citizen of the United States, who is physically present in Georgia, and who intends to make Georgia her home, is an individual citizen of the state of Georgia.   Sessions is subject to the jurisdiction and venue of this Court.

13.

James W. Donnelly Jr. ("James Donnelly"), as a natural person who is a citizen of the United States, who is physically present in Georgia, and who intends to make Georgia his home, is an individual citizen of the state of Georgia.   James Donnelly is subject to the jurisdiction and venue of this Court.

14.

Ben Sessions Donnelly ("Ben Donnelly"), as a natural person who is a citizen of the United States, who is physically present in Georgia, and who intends to make Georgia his home, is an individual citizen of the state of Georgia.   Ben Donnelly is

subject to the jurisdiction and venue of this Court.

15.

Drew S. Donnelly ("Drew Donnelly"), as a natural person who is a citizen of the United States, who is physically present in Georgia, and who intends to make Georgia his home, is an individual citizen of the state of Georgia.   Drew Donnelly is subject to the jurisdiction and venue of this Court.

16.

Andrea Matincheck ("Matincheck"), as a natural person who is a citizen of the United States, who is physically present in Georgia, and who intends to make Georgia her home, is an individual citizen of the state of Georgia.   Matincheck is subject to the jurisdiction and venue of this Court.

17.

Frances M. Marty ("Marty"), as a natural person who is a citizen of the United States, who is physically present in Georgia, and who intends to make Georgia her home, is an individual citizen of the state of Georgia.   Marty is subject to the jurisdiction and venue of this Court.

## JURISDICTION AND VENUE

18.

This Court has original jurisdiction over this action under the provisions of 28

U.S.C. § 1332 because this action is between citizens of different states, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

19.

This Court may exercise personal jurisdiction over all of the parties joined in this lawsuit.

20.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## **NATURE OF ACTION**

21.

This is an action for declaratory judgment brought pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, to declare the rights and other legal relations surrounding questions of actual controversy that presently exist between Auto-Owners and Defendants.

22.

A controversy of a judicial nature presently exists among the parties that demands a declaration by this Court in order that Auto-Owners may have its rights and duties under the relevant contract of insurance determined and avoid the possible accrual of damages.

23.

Each named defendant herein has been joined in compliance with case law requiring the insurer seeking a declaratory judgment to bring into the action all individuals or entities that have a financial or other interest in the outcome of the coverage issues to be decided through the declaratory judgment.

## THE UNDERLYING CLAIMS

24.

On or about November 9, 2015, Defendant Ben Cohen filed a lawsuit against Defendant Luxe in the Superior Court of Fulton County, Georgia, civil action file number 2015CV267992 ("First Underlying Lawsuit").   A true and accurate copy of the complaint filed in the First Underlying Lawsuit is attached hereto as **Exhibit A**.

25.

In the First Underlying Lawsuit, Defendant Ben Cohen contends that Defendant Luxe began construction in Glenwood Park ("the Development") in September 2012, that construction was to be governed by plans approved by the City of Atlanta (the "Specified Plans"), and that Luxe owns several properties in the Development, upon which Luxe commenced construction.

26.

Defendant Ben Cohen further contends that Defendant Luxe failed to adhere to

8

the Specified Plans for drainage and discharge of surface water, proper grading of the Development, and otherwise caused a large deposit of water and dirt onto Ben Cohen's property, including his home (the "Property").

27.

Defendant Ben Cohen alleges that Defendant Luxe's actions constitute a continuing trespass and nuisance on the Property.

28.

Defendant Ben Cohen alleges that the Property is deteriorating due to flooding, erosion, and mold, which is a proximate result of Defendant Luxe's actions, and he seeks damages in the amount of $1,250,000.

29.

Defendant Ben Cohen asserts several causes of action, all of which allegedly arise from the willful and intentional conduct of Defendant Luxe, including:

1. Count I – Trespass and Nuisance;

2. Count II- Slander of Title;

3. Count III- Breach of Contract;

4. Count IV- Negligence; Gross Negligence and Intentional Infliction of Emotional Distress;

5. Count V- Punitive Damages; and

6. Count VI- Attorney's Fees and Expenses.

30.

On or about November 9, 2015, Defendants Ben and Sarah Cohen filed a lawsuit against Defendants PG and Graff in the Superior Court of Fulton County, Georgia, civil action number 2015CV267906 ("Second Underlying Lawsuit").   A true and accurate copy of the complaint filed in the Second Underlying Lawsuit is attached as **Exhibit B**.

31.

In the Second Underlying Lawsuit, Defendants Ben and Sarah Cohen allege that Defendants PG and Graff began construction of the Development on or about September 2012, and that said construction was to be governed by the same "Specified Plans" described in the First Underlying Lawsuit.

32.

Defendants Ben and Sarah Cohen allege that Defendants PG and Graff failed to adhere to the Specified Plans for drainage and discharge of surface water, proper grading of the Development, and otherwise caused a large deposit of water and dirt onto the Property.

33.

Defendants Ben and Sarah Cohen allege that the actions of Defendants PG

and Graff constitute a continuing trespass and nuisance.

34.

Defendants Ben and Sarah Cohen allege that the Property is deteriorating due to flooding, erosion, and mold, which is a proximate result of the actions of Defendants PG and Graff, and the Cohens seek damages in the amount of $850,000.

35.

Defendants Ben and Sarah Cohen assert several causes of action, all of allegedly arise from the willful and malicious conduct of Defendants PG and Graff, including:

1. Count I – Trespass and Nuisance;

2. Count II- Slander of Title;

3. Count III- Breach of Contract;

4. Count IV- Negligence and Gross Negligence and Intentional Infliction of Emotional Distress;

5. Count V- Punitive Damages; and

6. Count VI- Attorney's Fees and Expense of Litigation.

36.

On or about December 3, 2015, Defendant Ben Cohen filed a third lawsuit in the Superior Court of Fulton County, Georgia, civil action number 2015CV268873

("Third Underlying Lawsuit").   A true and accurate copy of the complaint filed in the Third Underlying Lawsuit is attached hereto as **Exhibit C**.

37.

In the Third Underlying Lawsuit, Defendant Ben Cohen named the following parties as defendants: Luxe Properties, Inc. d/b/a Hedgewood Homes, Hedgewood Glenwood, LLC; Hedgewood Realty; Silver Creek Redevelopment Company; Reece Carter; Grant Adam Hefner; Hafner Construction, Inc.; Harper Engineering, Inc.; JCR Masonry, LLC; Green Acres Landscaping, Inc.; Penner Graff, LLC; Seasons Comforts, Inc.; Steven Donald Graff; Jose 'Cruz' Oviedo; Andrew Vazemiller; Pamela Dale Sessions; James W. Donnelly Jr.; Ben Sessions Donnelly; Drew S. Donnelly; Andrea Matincheck; Frances M. Marty; and Ernesto Garcia Apolinares.

38.

In the Third Underlying Lawsuit, Ben Cohen asserts counts for:

1. Count I- Construction Defect;

2. Count II- Breach of Contract;

3. Count III- Negligence and Gross Negligence;

4. Count IV- Breach of Implied Warranty and Warranty of Merchantability; and

5.  Count V- Civil RICO.

39.

On or about February 26, 2016, Defendants Luxe, PG, and Graff filed a

lawsuit in the Superior Court of Fulton County, Georgia, civil action file number

2016CV272082 ("Fourth Underlying Lawsuit"), against Defendants Ben Cohen and

Sarah Cohen.   A true and accurate copy of the complaint filed in the Fourth

Underlying Lawsuit is attached hereto as **Exhibit D**.

40.

In the Fourth Underlying Lawsuit, Defendants Luxe, PG, and Graff assert

counts for:

1.  Count I- Cancellation of Lis Pendens;

2.  Count II- Attorney's Fees;

3.  Count III- Prayer for Injunctive Relief;

4.  Count IV- Slander of Title; and

5.  Count V- Prayer for Relief.

41.

On June 30, 2016, Judge Gail S. Tusan issued an order consolidating the four

aforementioned lawsuits into Case No. 2015CV268873 (hereinafter referred to as

"Underlying Lawsuit"), and granted Plaintiff's Motion to Dismiss Claims Against

13

Harper Engineering.   A true and accurate copy of said order is attached hereto as **Exhibit E**.

42.

Defendant Ben Cohen contends that he formally placed Defendant Luxe on notice of his claims as early as July 1, 2015.

43.

An Acord Notice dated April 1, 2016, identifies the date of Defendant Ben Cohen's loss as April 1, 2015, with the following description of the occurrence: "[Ben Cohen] claims defects with the HVAC system that has now caused water infiltrating the home."   A true and accurate copy of the notice is attached hereto as **Exhibit F**.

44.

Auto-Owners first received notice of the aforementioned claims on or about April 1, 2016.

**THE INSURANCE CONTRACT**

45.

Auto-Owners issued a commercial general liability insurance policy to Defendants Luxe and Silver Creek, policy number 104618-48113629 ("the Policy"). A true and accurate copy of the Policy is attached hereto as **Exhibit G**.

14

46.

Defendants herein, including Luxe and Silver Creek, seek a defense and indemnity under the Policy issued by Auto-Owners for the damages sought in the Underlying Lawsuit.

47.

Auto-Owners did not receive notice of the summons and complaint filed in the Underlying Lawsuit until on or about April 1, 2016.   On or about April 15, 2016, after receiving late notice of the summons and complaint filed in the Underlying Lawsuit, Auto-Owners issued a letter to Defendants Luxe and Silver Creek in which Auto-Owners provided notice of its reservation of rights to contest coverage under the Policy for the claims asserted in the Underlying Lawsuit.

48.

After receiving late notice of the summons and complaint filed in the Underlying Lawsuit, Auto-Owners also retained counsel to defend Defendants Luxe and Silver Creek against the complaints subject to the complete reservation of rights.

15

49.

The Policy issued by Auto-Owners affords no coverage for the claims and damages upon which the complaints in the Underlying Lawsuit and related Arbitration is based; therefore, Auto-Owners has no duty to defend or indemnify any Defendant in the Underlying Lawsuit or Arbitration.

50.

The Policy issued by Auto-Owners provides, in pertinent part, the following:

**COVERAGE A.   BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

    **1. Insuring Agreement**

        a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies . . . .

(Commercial General Liability Coverage Form, 55300 (7-05), p. 1 of 18).

51.

Under Coverage A, the Policy further provides:

    **b.**  This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)**  The "bodily injury" or "property damage" occurs during the policy period . . . .

16

(Commercial General  Liability Coverage Form 55300 (7-05), p. 1 of 18).

52.

The Policy provides, in pertinent part, the following definitions:

**9.**     "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   **a.**     It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   **b.**     You have failed to fulfill the terms of a contract or agreement

if such property can be restored to use by:

   **a.**     The repair, replacement, adjustment or removal of "your product" or "your work"; or

   **b.**     Your fulfilling the terms of the contract or agreement.

. . .

**14.**     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

**18.**     "Property damage" means:

   **a.**     Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

- 17 -

**b.** Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

• • •

21. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged.

• • •

26. "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or

instructions.

. . .

**27.**  "Your work":

    **a.**  Means:

        **(1)**  Work or operations performed by you or on your behalf; and

        **(2)**  Materials, parts or equipment furnished in connection with such work or operations.

    **b.**  Includes:

        **(1)**  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

        **(2)**  The providing of or failure to provide warnings or instructions.

(Commercial General Liability Coverage Form 55300 (7-05), pp. 14-18 of 18).

53.

The Policy also contains the following relevant exclusions as they relate to

Coverage A:

**2.  Exclusions**

This insurance does not apply to:

**a.  Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured . . . .

19

(Commercial General Liability Coverage Form 55300 (7-05), p. 2 of 18).

54.

The Policy further provides, in pertinent part:

This insurance does not apply to:

**b.     Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement . . . .

(Commercial General Liability Coverage Form 55300 (7-05), p. 2 of 18).

55.

The Policy further provides, in pertinent part:

This insurance does not apply to:

**j.     Damage to Property**

"Property damage" to:

**(1)**     Property you own, rent, occupy or use, including any cost or expense incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

• • •

20

  (3) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

. . .

  (6) That particular part of real property on which any insured or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations;

  (7) That particular part of any property that   must be restored, repaired or replaced because "your work" was incorrectly performed on it.

(Commercial General Liability Coverage Form 55300 (7-05), pp. 4-5 of 18).

56.

The Policy further provides, in pertinent part:

This insurance does not apply to:

**l.**  **Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

(Commercial General Liability Coverage Form 55300 (7-05), p. 5 of 18).

57.

The Policy further provides, in pertinent part:

This insurance does not apply to:

21

**m.    Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)**    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms . . . .

(Commercial General Liability Coverage Form 55300 (7-05), p. 5 of 18).

58.

The Policy further provides, in pertinent part:

This insurance does not apply to:

**n.    Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)**    "Your product";

**(2)**    "Your work"; or

**(3)**    "Impaired property"

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

22

(Commercial General Liability Coverage Form 55300 (7-05), p. 5 of 18).

59.

The Policy also contains the following conditions:

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

• • •

**2.    Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    **a.**    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.

• • •

    **b.**    If any claim is made or "suit" is brought against any insured, you must:

        **(1)**    Immediately record the specifics of any claim or "suit" and the date received; and

        **(2)**    Notify us as soon as practicable.

        You must see to it that we receive written notice of any claim or "suit" as soon as practicable.

    **c.**    You and any other involved insured must:

        **(1)**    Immediately send us copies of any correspondence, demands, notices, summonses or papers in connection with any claim or "suit";

        **(2)**    Authorize us to obtain records and other information;

23

**(3)**   Cooperate with us in the investigation or settlement of any claim or defense of any "suit"; and

**(4)**   Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

. . .

**3.**   **Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.**   To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.**   To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

(Commercial General Liability Coverage Form 55300 (7-05), p. 12-13 of 18).

## <u>COUNT ONE</u>

60.

Auto-Owners hereby realleges and incorporates paragraphs 1 through 59 of this Complaint as if set forth fully herein.

24

61.

Under the terms of the Policy issued by Auto-Owners, there is no coverage for damages that do not constitute "bodily injury", "property damage", "personal injury", or "advertising injury", as such terms are defined by the Policy.

62.

Auto-Owners has no obligation to provide a defense to the Underlying Lawsuit and Arbitration or to indemnify any of the named Defendants for any damages that do not constitute "bodily injury", "property damage", "personal injury", or "advertising injury".

63.

Auto-Owners has no obligation to provide a defense to the Underlying Lawsuit and Arbitration or indemnify any of the named Defendants to the extent that any of the claims asserted do not seek damages because of "bodily injury", "property damage", "personal injury", or "advertising injury" under the Policy.

64.

Auto-Owners is entitled to a judgment declaring that no Defendant is afforded coverage under the Policy for any damages sought in the Underlying Lawsuit which do not constitute "bodily injury", "property damage", "personal injury", or "advertising injury", and Auto-Owners has no duty defend or indemnify any of the

Defendants in the Underlying Lawsuit and Arbitration.

## COUNT TWO

65.

Auto-Owners hereby realleges and incorporates paragraphs 1 through 64 of this Complaint as if set forth fully herein.

66.

Under the terms of the Policy issued by Auto-Owners, there is no coverage for damages because of "property damage" which are not the result of an "occurrence" or accident, or which are expected or intended from the standpoint of the insured. (Exclusion a).

67.

Auto-Owners has no obligation to provide a defense to the Underlying Lawsuit and Arbitration or indemnify the named Defendants for damages which were expected or intended by them, or which were known to be substantially certain to occur due to any insured's knowledge.

68.

Auto-Owners has no obligation to provide a defense to the Underlying Lawsuit and Arbitration or indemnify the named Defendants to the extent that any of the claims asserted do not seek damages because of "property damage" not caused

by an "occurrence" under the Policy.

69.

Auto-Owners is entitled to a judgment declaring that no Defendant is afforded coverage under the Policy for any such damages which were not caused by an "occurrence" or accident, which were intended or expected from the standpoint of any insured, or which were substantially certain to occur, and Auto-Owners has no duty defend or indemnify any of the Defendants in the Underlying Lawsuit and Arbitration.

<b><u>COUNT THREE</u></b>

70.

Auto-Owners hereby realleges and incorporates paragraphs 1 through 69 of this Complaint as if set forth fully herein.

71.

The Policy issued by Auto-Owners excludes "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.   (Exclusion b).

72.

The Defendants in the Underlying Lawsuit and Arbitration assumed liability to pay for damages in a contract or agreement.

27

73.

Auto-Owners has no duty to defend or indemnify the named Defendants against the claims set forth in the Underlying Lawsuit and Arbitration to the extent that the insured is obligated to pay for any "property damage" by reason of the assumption of liability in a contract or agreement.

74.

Auto-Owners is entitled to a judgment declaring that no Defendant is afforded coverage under the Policy for "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement, and Auto-Owners has no duty defend or indemnify the Defendants in the Underlying Lawsuit and Arbitration.

**COUNT FOUR**

75.

Auto-Owners hereby realleges and incorporates paragraphs 1 through 74 of this Complaint as if set forth fully herein.

76.

The Policy issued by Auto-Owners excludes damages claimed for any loss, cost, or expense incurred by an insured resulting from "property damage" to property owned, rented, occupied, or used, including any cost or expense incurred

by the insured, or any other person, organization, or entity, for repair, replacement, enhancement, restoration or maintenance of such property.   (Exclusion j(1)).

77.

The damages sought against the named Defendants in the Underlying Lawsuit and Arbitration constitute damages claimed for the loss, cost, or expense incurred by an insured resulting from "property damage" to property owned, rented, occupied, or used, including any cost or expense incurred by the insured, or any other person, organization, or entity, for repair, replacement, enhancement, restoration or maintenance of such property.

78.

Auto-Owners has no duty to defend or indemnify the named Defendants against the claims set forth in the Underlying Lawsuit and Arbitration to the extent the damages sought constitute damages claimed for the loss, cost, or expense incurred by an insured resulting from "property damage" to property owned, rented, occupied, or used, including any cost or expense incurred by the insured, or any other person, organization, or entity, for repair, replacement, enhancement, restoration or maintenance of such property.

79.

Auto-Owners is entitled to a judgment declaring that no Defendant is afforded

29

coverage under the Policy for any damages that constitute damages claimed for the loss, cost, or expense incurred by an insured resulting from "property damage" to property owned, rented, occupied, or used, including any cost or expense incurred by the insured, or any other person, organization, or entity, for repair, replacement, enhancement, restoration or maintenance of such property, and Auto-Owners has no duty defend or indemnify the Defendants in the Underlying Lawsuit and Arbitration.

## **COUNT FIVE**

80.

Auto-Owners hereby realleges and incorporates paragraphs 1 through 79 of this Complaint as if set forth fully herein.

81.

The Policy issued by Auto-Owners excludes damages claimed for any loss, cost, or expense incurred by an insured resulting from "property damage" to premises the insured sells, gives away or abandons, if the "property damage" arises out of any part of those premises.   (Exclusion j(3)).

82.

The damages sought against the named Defendants in the Underlying Lawsuit and Arbitration constitute damages claimed for the loss, cost, or expense incurred by an insured resulting from "property damage" to premises the insured sells, gives

away or abandons, which arise out of a part of those premises.

83.

Auto-Owners has no duty to defend or indemnify the named Defendants against the claims set forth in the Underlying Lawsuit and Arbitration to the extent the damages sought constitute damages claimed for the loss, cost, or expense incurred by an insured resulting from "property damage" to premises the insured sells, gives away or abandons, which arise out of a part of those premises.

84.

Auto-Owners is entitled to a judgment declaring that no Defendant is afforded coverage under the Policy for any damages that constitute damages claimed for the loss, cost, or expense incurred by an insured resulting from "property damage" to premises the insured sells, gives away or abandons, which arise out of a part of those premises, and Auto-Owners has no duty defend or indemnify the Defendants in the Underlying Lawsuit and Arbitration.

## **COUNT SIX**

85.

Auto-Owners hereby realleges and incorporates paragraphs 1 through 84 of this Complaint as if set forth fully herein.

86.

The Policy issued by Auto-Owners excludes "property damage" to that particular part of real property on which any insured, or any contractors or subcontractors working directly or indirectly on any insured's behalf, were performing operations.   (Exclusion j(6)).

87.

The damages sought against the named Defendants in the Underlying Lawsuit and Arbitration arise out of the named Defendants' operations, or the operations of contractors or subcontractors working directly or indirectly on the named Defendants' behalf, at the Property.

88.

Auto-Owners has no duty to defend or indemnify the named Defendants against the claims set forth in the Underlying Lawsuit and Arbitration to the extent that the damages sought constitute "property damage" to real property on which the named Defendants, or contractors or subcontractors working directly or indirectly on the named Defendants' behalf, were performing operations and are excluded from coverage.

89.

Auto-Owners is entitled to a judgment declaring that no Defendant is afforded

coverage under the Policy for damages because of "property damage" to real property on which the named Defendants, or contractors or subcontractors working directly or indirectly on the named Defendants' behalf, were performing operations, and Auto-Owners has no duty defend or indemnify the Defendants in the Underlying Lawsuit and Arbitration.

## **COUNT SEVEN**

90.

Auto-Owners hereby realleges and incorporates paragraphs 1 through 89 of this Complaint as if set forth fully herein.

91.

The Policy issued by Owners excludes "property damage" to that particular part of the Property that must be restored, repaired, or replaced because any insured's work was incorrectly performed.   (Exclusion j(7)).

92.

The damages sought against the named Defendants in the Underlying Lawsuit and Arbitration constitute "property damage" to the Property because the named Defendants incorrectly performed work.

93.

Auto-Owners has no duty to defend or indemnify the named Defendants

against the claims asserted in the Underlying Lawsuit and Arbitration because the

damages sought constitute "property damage" to the Property because the named

Defendants incorrectly performed work.

94.

Auto-Owners is entitled to a judgment declaring that no Defendant is afforded

coverage under the Policy for damages to the Property because the named

Defendants' work was incorrectly performed, and Auto-Owners has no duty to

defend or indemnify the Defendants in the Underlying Lawsuit and Arbitration.

## COUNT EIGHT

95.

Auto-Owners hereby realleges and incorporates paragraphs 1 through 94 of

this Complaint as if set forth fully herein.

96.

The Policy issued by Owners excludes "property damage" to an insured's

work, arising out of that work, supplied or performed by any insured.   (Exclusion l).

97.

The damages sought against the named Defendants in the Underlying Lawsuit

constitute "property damage" to the named Defendants' work, arising out of that

work, or any part of that work, and are excluded from coverage.

34

98.

Auto-Owners has no duty to defend or indemnify the named Defendants against the claims set forth in the Underlying Lawsuit and Arbitration because the damages sought constitute "property damage" to the named Defendants' work, arising out of that work, or any part of that work, and are excluded from coverage.

99.

Auto-Owners is entitled to a judgment declaring that no Defendant is afforded coverage under the Policy for any damages because of "property damage" to the named Defendants' work, or arising therefrom, and Auto-Owners has no duty defend or indemnify the Defendants in the Underlying Lawsuit and Arbitration.

## **COUNT NINE**

100.

Auto-Owners hereby realleges and incorporates paragraphs 1 through 99 of this Complaint as if set forth fully herein.

101.

The Policy issued by Auto-Owners excludes "property damage" to "impaired property" or property that has not been physically injured arising out of an insured's defective product or associated work, or arising out of an insured's delay or failure to perform a contract in accordance with its terms.   (Exclusion m).

102.

The damages sought against the named Defendants in the Underlying Lawsuit and Arbitration constitute "property damage" to "impaired property" or property that has not been physically injured arising out of a defect, deficiency, inadequacy, or dangerous condition in the named Defendants' product or work, and/or arising out of the Defendants' delay or failure to perform a contract in accordance with its terms.

103.

Auto-Owners has no duty to defend or indemnify the named Defendants against the claims set forth in the Underlying Lawsuit and Arbitration to the extent the damages sought constitute "property damage" to "impaired property" or property that has not been physically injured arising out of a defect, deficiency, inadequacy, or dangerous condition in the named Defendants' product or work, or arising out of the Defendants' delay or failure to perform a contract in accordance with its terms.

104.

Auto-Owners is entitled to a judgment declaring that no Defendant is afforded coverage under the Policy for any "property damage" to "impaired property" or property that has not been physically injured arising from the named Defendants'

defective product or work, or arising from Defendants' delay or failure to perform a contract in accordance with its terms, and Auto-Owners has no duty defend or indemnify the Defendants in the Underlying Lawsuit and Arbitration.

## COUNT TEN

### 105.

Auto-Owners hereby realleges and incorporates paragraphs 1 through 104 of this Complaint as if set forth fully herein.

### 106.

The Policy issued by Auto-Owners excludes damages claimed for any loss, cost, or expense incurred by an insured for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal, or disposal of the insured's product or work or of impaired property if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it.   (Exclusion n).

### 107.

The damages sought against the named Defendants in the Underlying Lawsuit and Arbitration constitute damages claimed for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal, or disposal of the insured's

product or work or of impaired property, and such product, work, or property was withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it.

108.

Auto-Owners has no duty to defend or indemnify the named Defendants against the claims set forth in the Underlying Lawsuit and Arbitration to the extent the damages sought constitute damages claimed for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal, or disposal of the insured's product or work or of impaired property, and such product, work, or property was withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it.

109.

Auto-Owners is entitled to a judgment declaring that no Defendant is afforded coverage under the Policy for any damages that constitute damages claimed for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal, or disposal of the insured's product or work or of impaired property if such product, work, or property is withdrawn or recalled from the market or from use by any

38

person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it, and Auto-Owners has no duty defend or indemnify the Defendants in the Underlying Lawsuit and Arbitration.

## **COUNT ELEVEN**

110.

Auto-Owners hereby realleges and incorporates paragraphs 1 through 109 of this Complaint as if set forth fully herein.

111.

The Policy issued by Auto-Owners requires the insured to perform certain conditions in the event of an occurrence, offense, claim, or suit, as specifically outlined above.

112.

On or about April 1, 2016, Auto-Owners first received notice of the occurrence, offense, claim, and/or Underlying Lawsuit, which are referenced above in this Complaint for Declaratory Judgment.

113.

By failing to notify Auto-Owners as soon as practicable of an "occurrence" which may result in a claim, Defendants breached the conditions set forth in the Policy.

114.

By failing to notify Auto-Owners as soon as practicable of the claim and/or Underlying Lawsuit referenced above, Defendants breached the conditions set forth in the Policy.

115.

By failing to immediately forward copies of the correspondence, demands, suit papers and/or notices received in connection with the occurrence, claim and Underlying Lawsuit referenced above, Defendants breached the conditions set forth in the Policy.

116.

Auto-Owners has no duty to defend or indemnify Defendants in connection with the Underlying Lawsuit and Arbitration because Defendants breached the conditions precedent set forth in the Policy.

117.

Auto-Owners is entitled to a judgment declaring that no Defendant is afforded coverage under the Policy due to breach of these conditions and that Auto-Owners has no duty to defend or indemnify Defendants in connection with the Underlying Lawsuit and Arbitration as a result.

40

## COUNT TWELVE

### 118.

Auto-Owners hereby realleges and incorporates paragraphs 1 through 119 of this Complaint as if set forth fully herein.

### 119.

The complaint filed against the named Defendants in the Underlying Lawsuit seeks an award of punitive damages.

### 120.

The Policy affords no coverage for punitive damages, as such damages are not in compensation for a covered injury.

### 121.

Auto-Owners is entitled to a judgment declaring that no Defendant is afforded coverage for punitive damages sought in the Underlying Lawsuit.

## COUNT THIRTEEN

### 122.

Auto-Owners hereby realleges and incorporates paragraphs 1 through 121 of this Complaint as if set forth fully herein.

### 123.

The complaint filed against the named Defendants in the Underlying Lawsuit

seeks an award of attorney's fees and costs in addition to compensatory damages.

124.

The Policy affords no coverage for attorney's fees and costs, as such damages are not in compensation for a covered injury.

125.

Auto-Owners is entitled to a judgment declaring that no Defendant is afforded coverage for any attorney's fees and costs sought in the Underlying Lawsuit.

**WHEREFORE**, Auto-Owners prays that this Court enter judgment that it has no duty to defend or indemnify the Defendants named in the Underlying Lawsuit and Arbitration for the claims asserted; that this Court bind each and every named party herein by said judgment; that Auto-Owners be awarded costs in this action; and for further relief as this Court may deem just and appropriate.

This _____ day of November, 2016.

Respectfully submitted,

KENDALL LAW GROUP, LLC

 /s/ Chad M. Brock
Michael C. Kendall
Georgia Bar No. 414030
Chad M. Brock
Georgia Bar No. 357719
*Attorneys for Plaintiff*

42

3152 Golf Ridge Blvd., Suite 201
Douglasville, Georgia 30135
Telephone: 770-577-3559
Facsimile: 770-577-8113
mckendall@kendall-lawgroup.com
cmbrock@kendall-lawgroup.com